AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

### DISTRICT OF DELAWARE

In the Matter of the Search of
(Address or brief description of property or premises to be seized)

PNC Bank Account
Number            766



APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT

Case Number: 06- 86 M

I, __Robert Delgado__ being duly sworn depose and say: I am a(n) __Special Agent, Internal Revenue Service,__ and have reason to believe that in the District of Delaware there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

the contents of PNC Bank Account No.            766

which is (state one or more bases for seizure under the United States Code)

property involved in, or traceable to deposits structured to avoid currency reporting requirements in violation of Section 5324 of Title 31, and as such is subject to forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 981

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof.    X   Yes    ___ No

FILED
JUL 20 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

_____
Signature of Affiant
Robert Delgado
Special Agent
Internal Revenue Service

Sworn to before me, and subscribed in my presence

July 19, 2006                               at    __Wilmington, Delaware__
Date                                                    City and State

Honorable Joseph J. Farnan, Jr.
United States District Judge
District of Delaware
Name and Title of Judicial Officer                  Signature of Judicial Officer

## AFFIDAVIT OF SPECIAL AGENT ROBERT DELGADO

I, Robert Delgado, a Special Agent for the Internal Revenue Service, being duly sworn, depose and state:

1. I am a Special Agent for the Internal Revenue Service (IRS) Criminal Investigation, United States Department of the Treasury. I have been employed by the IRS since August 1986 - nineteen years of which have been spent as a criminal investigator in Wilmington, Delaware. My responsibilities include investigating possible violations of the Internal Revenue laws (26 U.S.C. § 7201, et. seq. and § 6050I), the Bank Secrecy Act (31 U.S.C. § 5311, et. seq.), the Money Laundering Control Act (18 U.S.C. §§ 1956 and 1957), and related offenses. I am empowered by law to investigate and to make arrests for offenses involving the structuring of currency deposits to evade the reporting requirements of Title 31, United States Code.

2. I have conducted or assisted in conducting numerous investigations of alleged criminal violations of the Internal Revenue laws, Bank Secrecy laws, and the Money Laundering laws. During my tenure as a Special Agent, I have attended many seminars at which I received training concerning the investigation and seizure of evidence relating to these violations. Unless otherwise stated, the information in this affidavit is either personally known to your affiant or has been provided to your affiant by other law enforcement officers and/or is based on a review of various documents and records as more particularly described herein.

3. This affidavit is submitted in support of the Application of the United States of America for a Seizure Warrant authorizing the seizure of United States currency totaling $66,711.79 contained in account number         766 held in the name and/or for the benefit of Preetam S. Sahni at PNC Bank, 222 Delaware Avenue, Wilmington, Delaware 19899.

4. Title 31, United States Code, Section 5313 and 31 C.F.R. § 103 of the Bank Secrecy Act (BSA) require any financial institution that engages with a customer in a currency transaction (i.e., a deposit or withdrawal) in excess of $10,000 to report the transaction to the Internal Revenue Service on Department of the Treasury FinCEN Form 104, Currency Transaction Form ("CTR"). These regulations also require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are by, or on behalf of, the same person, and they result in currency either received or disbursed by the financial institution totaling more than $10,000 during any one business day.

5. Currency Transaction Reports are often used by law enforcement to uncover a wide variety of illegal activities including narcotics trafficking and money laundering. Many individuals involved in these illegal activities are aware of such reporting requirements and take active steps to attempt to cause financial institutions to fail to file CTRs. These active steps are often referred to as "smurfing" or "structuring" and involve making multiple cash deposits in amounts no greater than $10,000 at multiple banks and/or branches of the same bank on the same day or consecutive days. Structuring is prohibited by 31 U.S.C. § 5324(a)(3).

6. In order to establish the crime of structuring transactions to evade reporting requirements, the Government must prove that, for the purpose of evading the reporting requirements of section 5313(a) or any regulation prescribed under any such section, the subject structured or assisted in structuring, or attempted to structure or assist in structuring, any transaction with one or more domestic financial institutions in amounts greater than $10,000.

7. Based on the information outlined in this affidavit, as well as my training and experience, it is your affiant's belief that the account holders did not deposit all the cash they had when they actually acquired the cash. Rather, it appears that they acquired one sum of cash at one time, and broke it up into amounts less than $10,001 so that it would not trigger the filing of a Currency Transaction Report (CTR).

8. I am advised that 31 U.S.C. § 5317 provides for the forfeiture of "any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy," and that such property shall be forfeited in accordance 18 U.S.C. § 981(a)(1)(A).

9. I am advised that, in order to obtain a seizure warrant in a forfeiture case, the Government has the initial burden of showing probable cause to believe that a substantial connection exists between the property and the criminal activity (in this case, violations of the currency transaction reporting requirements of 31 U.S.C. § 5324(a)). *United States v. One 1987 Mercedes Benz 300E*, 820 F. Supp. 248, 251 (E.D. Va. 1993). I am further advised that "probable cause" means simply a reasonable ground for belief that goes beyond mere suspicion but need not amount to prima facie proof. Id. at 251-52. This standard requires courts to make a practical, common sense decision whether, given all the circumstances, fair probability exists that the property to be forfeited was involved in or the subject of a transaction violating 5324. Id. See also *United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990).

10. I am further advised that, pursuant to 18 U.S.C. 981, civil forfeiture is triggered by the structuring of cash deposits in violation of 31 U.S.C. § 5324, and that, as the Supreme Court has noted, willfulness is not an element of a

civil forfeiture action for property involved in a structuring violation. *United States v. Ratzlaf*, 510 U.S. 135, 146 n.16 (1994). Thus, for the purpose of seizing accounts containing structured cash deposits, it simply does not matter whether the structuring was accomplished *willfully* because willfulness is not an element of a civil forfeiture case. Accordingly, this affidavit here need only show probable cause that cash deposits into the Sahni/Kohli account in excess of $10,000 were divided into amounts less than that amount for deposit in such a manner so as to avoid the filing of CTRs.

11. The Internal Revenue Service Criminal Investigation Division received information concerning suspicious currency transactions involving the Preetam S. Sahni and Deminder Kohli joint personal checking account, account number ‑458, held at PNC Bank in Delaware. The checking account in question was opened on April 26, 2005, by, and in the names of, Preetam S. Sahni and Deminder Kohli at the Limestone Road branch in Pike Creek, Delaware.

12. A subsequent review of bank statements indicated that within a twenty business day period of time, nine currency deposits ranging from $5,500 to $9,000, totaling $74,300, were made into the above-described account. This account is a personal checking account and not a business account. The currency deposits were made within days of each other using five different PNC Bank branches.

13. I prepared the following chart based on a review of the PNC Bank account number ____ 458 for November and December 2005. The chart illustrates the "structuring" of cash deposits and the use of different bank branches.

| Deposit Date | Amount | Branch Location |
| --- | --- | --- |
| 11/21/2005 (Monday) | $6,000.00 | Limestone Road, Delaware |
| 11/28/2005 (Monday) | $9,000.00 | Glen Mills, Pennsylvania |
| 12/05/2005 (Monday) | $9,000.00 | Pencader Plaza, Delaware |
| 12/07/2005 (Wednesday) | $9,000.00 | 2203 Kirkwood Highway, Delaware |
| 12/08/2005 (Thursday) | $9,000.00 | Limestone Road, Delaware |
| 12/09/2005 (Friday) | $9,000.00 | Pencader Plaza, Delaware |
| 12/13/2005 (Tuesday) | $9,000.00 | Limestone Road, Delaware |
| 12/15/2005 (Thursday) | $8,500.00 | Limestone Road, Delaware |
| 12/16/2005 (Friday) | $5,500.00 | 4725 Kirkwood Highway, Delaware |
| Total Currency Deposits | $74,300.00 | |

14. A review of withdrawals from PNC Bank account number ‑458 found that on June 23, 2006, an inter-bank transfer of $66,500 was made to a new

PNC Bank account, account number         766, opened by Preetam S. Sahni on the same day, June 23, 2006. Preetam S. Sahni is the sole holder of this account.

15. From November 21, 2005, (the date of the first structured deposit) through June 23, 2006, (the date of the inter-bank transfer) no withdrawals (debits) were made from PNC Bank account number      158. These dates fall within the date range of the "structuring" activity and trace the "structured" funds to the new PNC Bank account number       766. Further, only three other deposits, non-cash in nature, which totaled $10,050, were made to PNC Bank account number        158 during the above-mentioned time frame. As of July 17, 2006, the balance in PNC Bank account number      766 was $66,711.79, with the amount above $66,500 being accumulated interest.

16. Further investigation found that Preetam S. Sahni is the part owner of a car wash business (American Car Wash) with Harbir Singh. Prior CTRs have listed Sahni as making currency deposits in excess of ten thousand dollars on behalf of Singh. Singh is also an owner of two gas station mini marts.

17. Prior to November 21, 2005, (the date of the first structured deposit) Sahni had forty-five CTRs filed on him. The CTRs list Sahni as the transactor for cash deposits in excess of ten thousand dollars. Sahni provided his Delaware driver's license to the bank when conducting these cash deposits. These prior CTRs establish that Preetam S. Sahni had knowledge of a currency reporting requirement of currency in excess of $10,000. No currency report filings or a Delaware driver's license were found for Deminder Kohli.

18. Steven Maxwell, PNC Bank Teller Supervisor, identified Sahni as the individual who has been making cash deposits in excess of ten thousand dollars into Singh's business account. Maxwell stated that Sahni would have been aware of the CTR filing because the bank requested his driver's license and social security number to complete the CTR. Maxwell showed me a photocopy of Sahni's driver's license which matched the Delaware Department of Motor Vehicle record. Maxwell stated that the bank keeps a copy of the driver's license on file in order to complete the CTR. This further shows that Sahni had knowledge as to the currency reporting requirements. Maxwell could not identify Deminder Kohli.

19. Timothy Albanese, PNC Bank Branch Manager for the Limestone Branch, also identified Sahni as making large cash deposits. Albanese informed Sahni about the advantages of using the bank's night deposit service. Sahni did not want to use this service because of the possible exposure to being robbed at night. Further, Albanese had discussions with Sahni about moving the funds from his non-interest bearing personal checking account (the

structuring account) to an interest bearing money market account. Sahni stated he was not concerned about an interest bearing account because the money moves into and out of the account quickly. Sahni went on to say that his personal checking account was used as investment money for family members. Albanese could not identify Deminder Kohli.

20. Timothy Albanese did confirm that Sahni opened a money market account, account number ´ ' 766, on June 23, 2006. Albanese had no personal knowledge of this since the account was opened through a different branch. This account is described in paragraphs 14 and 15 and contains the majority of the structured funds.

21. In my training and experience, the use of multiple deposits on the same day, consecutive days, or over a short time span is consistent with a scheme to deliberately avoid having CTRs filed. I know that individuals who acquire cash in the course of their trade, business or personal ventures routinely make significant cash deposits into their bank accounts. Furthermore, I know that people who acquire cash in the course or their trade or business routinely deposit such cash into a *business*, rather than a *personal* bank account. Moreover, such individuals routinely make significant deposits that do not consist of round numbers such as exactly $8,900.00, $9,000.00, or $9,900.00. Instead, individuals who routinely acquire cash in their trade, business or personal ventures generally deposit different amounts of money that are not "even" amounts, such as $3,455.12, $5,440.37, or $10,300.80. I also know that, when individuals who do not routinely make cash deposits over $5,000.00 actually make multiple cash deposits of amounts such as $8,900.00, $9,000.00, or $9,900.00 over a short period of time, they often are breaking a larger amount of money into separate deposits of amounts less than $10,000.00 to avoid triggering the filing of a CTR. In short, when they do this, they are engaging in structuring.

22. Based on my training and experience, I know that individuals who are engaged in structuring cash deposits make several cash deposits into their account within a short period. Additionally, I know that when an individual makes separate cash deposits into their account on the same day or within a few days, in amounts less than $10,000.00, but totaling more than $10,000.00 as the records reflect that Preetam S. Sahni and Deminder Kohli did, they engaged in the act of structuring.

23. Based on the foregoing, your affiant submits that there is probable cause to believe that Preetam S. Sahni and Deminder Kohli had in their possession a sum of currency at one time and then structured $74,300 in cash deposits during the period from November 2005 through December 2005 in a manner designed to evade the filing of a FinCEN Form 104 (Currency Transaction Report) that is required for all cash transactions over $10,000. The

transactions were conducted with a domestic financial institution and are in violation of 31 U.S.C. § 5324.

24. Wherefore, it is hereby respectfully requested that Special Agents of the Internal Revenue Service be authorized to seize the contents, namely United States Currency totaling $66,711.79, of account number ' . '66 held in the name Preetam S. Sahni, at PNC Bank, 222 Delaware Avenue, Wilmington, Delaware 19899, as property involved in, or traceable to deposits structured to avoid currency reporting requirements in violation of 31 U.S.C. § 5324, and, as such, subject to forfeiture to the United States pursuant to the provisions of 18 U.S.C. § 981.

*[signature]*
Robert Delgado, Special Agent
Internal Revenue Service

SWORN AND SUBSCRIBED TO THIS
___19___ day of ___July___, 2006

*[signature]*
Honorable Joseph J. Farnan, Jr.
United States District Judge